UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00218-GCM

| | |
|---|---|
| S. SHANE SMITH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF ADULT CORRECTIONS, et al. ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint [Doc. 15]. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 8].

I.  **BACKGROUND**

Pro se Plaintiff S. Shane Smith ("Plaintiff") is a prisoner of the State of North Carolina currently housed at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. He filed this action in the Eastern District of North Carolina on November 16, 2022, against Defendants North Carolina Department of Adult Corrections (NCDAC); Todd Ishee, the NCDAC Secretary; John/Jane Doe, the Americans with Disabilities Act (ADA) Coordinator; and Teresa Jardon, the Foothills Warden, claiming that Defendants violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973 ("Rehab Act"). [Doc. 1]. On January 27, 2023, District Judge Terrence W. Boyle ordered that this action be transferred to this Court because this action "relates to the alleged

failure to accommodate [Plaintiff's] disability at Foothills," which is in the Western District.[1] [Doc. 9]. On initial review of Plaintiff's Complaint, this Court found that Plaintiff failed to state a claim for relief and allowed Plaintiff 30 days to amend his Complaint. [Doc. 14]. Plaintiff timely filed an Amended Complaint [Doc. 15], which is now before the Court on initial review. In his Amended Complaint, Plaintiff names the following Defendants: (1) the NCDAC; (2) Todd Ishee, "Commissioner of Prisons;" (3) Teresa Jardon, Foothills Warden; (4) John Coleman, Director of N.C. Correctional Enterprise (NCCE)[2]; (5) Sophia Feaster, Division ADA Coordinator; (6) Monica Teague, Region ADA Coordinator; and (7) Deorain Carson, Facility ADA Coordinator. [Id. at 1, 3-6]. Plaintiff purports to sue all Defendants in their individual and official capacities. [See id. at 4-6].

Plaintiff alleges as follows. Plaintiff was born without fingers and toes and has "extremely sensitive skin." [Id. at 8]. He has no grip with his right hand and limited grip with his left hand. [Id.]. On his left hand, Plaintiff has what some might mistakenly assume is a thumb, but rather is "the root from which a thumb would extend." [Id.]. Without toes, his "balance is cumbersome." [Id.]. Plaintiff is very limited in how he performs manual tasks and even the slightest alteration in their performance causes him "excruciating physical pain and great discomfort." [Id.]. The appendage "that is often misidentified as a thumb is [Plaintiff's] primary tool" for feeding, dressing, and caring for himself, "all only if appropriately accommodated." [Id. at 8-9].

---

[1] For reasons unknown to the Court, this matter was not opened as a new case in this District until August 16, 2023. [See Doc. 12].

[2] Plaintiff alleges that, as Director of the NCCE, Defendant Coleman "is responsible for the administration, operation, and supervision of all NCCE industry plants, staff and facilities; and the promulgation and enforcement of laws, rules, regulations, policies, and practices relevant to them." [Doc. 15 at 4-5].

2

Once in NCDAC custody, in or around 1993, prison officials provided Plaintiff numerous disability accommodations and allowed Plaintiff to receive numerous items from family members that were necessary for Plaintiff to perform simple daily tasks. [Id. at 6, 11]. After nearly 15 years of incarceration, Plaintiff was transferred to a facility where officials "arbitrarily took it upon [themselves] to rescind all of [his] previously approved disability accommodations." [Id.]. In 2007, Plaintiff filed a civil action under the ADA and Rehab Act in the Eastern District of North Carolina, S. Shane Smith v. Theodis Beck, et al., No. 5:07-CT-3034-FL. [Id. at 11-12]. Ultimately, that action ended in a settlement agreement between the Plaintiff and the NCDAC whereby the NCDAC agreed, among other things, to provide Plaintiff with "appropriate clothing and assistive devices" for his disabilities and the opportunity to buy other identified items at his own expense. [See Doc. 15-2 at 114-22]. In reaching this agreement, it was determined that the NCCE could not provide the items that Plaintiff needed and that they would need to be purchased from outside vendors, such as Walmart. The items included bed linens, boxer shorts, shirt jackets, t-shirts, pants with sufficient pockets, a belt, bath towels and face cloths, crew socks, a digital pocket radio, radio headphones, a nylon zippered notebook, an analog watch, and rubber-gripped pens. [Doc. 15 at 13-17]. The clothing and linen items were to be made of 100% cotton and washed only in special detergent. [Doc. 15-2 at 115-16].

In September 2015, Plaintiff filed a federal civil rights action in the Middle District of North Carolina, S. Shane Smith v. Frank L. Perry, et al., 1:16-CV-396-TDS-LPA, which concluded in 2021 with a settlement agreement. [Id. at 17]. After filing that action, prison officials "all but stopped providing clothing which met [Plaintiff's] specific disability accommodation needs and completely stopped permitting [him] to purchase at [his] expense the non-clothing and linen items [he] used as accommodation assistive devices." [Id.; see id. at 18-

3

24]. The NCCE "has continually demonstrated it is unable or unwilling to create or provide the clothing and linen items [Plaintiff] needed to appropriately accommodate [his] disability." [Id. at 24]. "The change of [Plaintiff's] clothing which accommodated [his] disability served absolutely no penological purpose other than to harass, belittle, intimidate, and retaliate against [Plaintiff] for the expression of [his] grievances and for [his] previous civil rights litigation." [Id. at 24-25].

After discussing his disability needs with his housing unit's supervisory staff, supervisory staff informed Plaintiff that Defendant Jardon had rejected his request for accommodation. [Id. at 25]. On June 30, 2022, after discussing his disability needs with the Foothills medical department and obtaining a referral, Plaintiff was assessed by an occupational therapist. [Id.]. It was determined that "the requested and previously provided items were the most appropriate accommodation for [Plaintiff's] unique disability." [Id.]. Shortly after his appointment with the occupational therapist, prison officials told Plaintiff that they were not going to implement the occupational therapist's recommendations. [Id.]. Thereafter, Plaintiff submitted an official NCDAC Offender Reasonable Request for Accommodation ("ADA Request"), "pleading prison officials to provide the various items which accommodated [Plaintiff's] disability." [Id.]. Defendants Teague, Feaster, and Carson denied Plaintiff's numerous ADA Requests. [Id.].

Plaintiff has written Defendant Ishee "numerous times requesting disability accommodation," but Plaintiff has never met Defendant Ishee and Defendant Ishee "has never responded or communicated with [Plaintiff]" regarding Plaintiff's disability accommodation needs. [Id.]. Plaintiff has never met Defendant Coleman and Defendant Coleman has never communicated with Plaintiff regarding Plaintiff's disability assistance needs. [Id. at 26].

Plaintiff claims that Defendants' acts and omissions have violated his rights under the First, Eighth, and Fourteenth Amendments and the ADA and Rehab Act. [Id. at 28-30]. Plaintiff

4

also purports to state a claim against Defendants Ishee, Coleman, Feaster, Teague, and Jardon for the "failure to train and/or supervise employees," which the Court construes under the Eighth Amendment. [Id. at 30-31].

For injuries, Plaintiff alleges that he has suffered "physical harm, severe emotional trauma, and loss of liberty." [Id. at 31]. For relief, Plaintiff seeks a declaratory judgment; monetary relief, including punitive damages; and injunctive relief, including the provision of various clothing items, linens, personal care items, and permission to purchase other items at his own expense, all as reasonable accommodations for his disabilities under the ADA. [Id. at 32-33].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable

5

under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. ADA and Rehab Act

Plaintiff alleges that Defendants have refused to accommodate his disability in violation of the ADA and the Rehab Act.  Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.  The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State."  United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)).  "[T]his term includes state prisons."  Id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted).  States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities.  42 U.S.C. § 12131(2).  The duty of reasonable accommodation, however, must also consider whether the institution's actions are related to legitimate penological interests.  See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims).  A plaintiff must also establish an actual injury from any

alleged ADA or Rehab Act violation.  See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of [his] disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The analysis under the Rehab Act is generally the same as under the ADA.  Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002).  Claims under the Rehab Act, however, require a showing of discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), while under the ADA, a plaintiff must only show discrimination "by reason of" disability, 42 U.S.C. § 12132.  As such, the causation standards are "significantly dissimilar."  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (citation omitted).  In addition, to sustain a claim under the Rehab Act, a plaintiff must also show that the program or activity in question receives federal financial assistance.  Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Neither the Rehab Act nor Title II of the ADA, however, provide for individual capacity suits against state officials.  See Barnes v. Young, 565 Fed. App'x 272, 273 (4th Cir. 2014) (unpublished) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)); see Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (there is no ADA retaliation claim against defendants in their individual capacities); Moneyhan v. Keller, 563 Fed. App'x 256, 258 (4th Cir. 2014) ("Neither the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities.") (citation omitted).  Such a suit, therefore, may only be brought against a defendant in an official capacity.  Id.  As such,

Plaintiff's individual capacity ADA and Rehab Act claims will be dismissed for Plaintiff's failure to state a claim for relief.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has stated claims under the ADA and Rehab Act against Defendant NCDAC. Because claims against the individual Defendants in their official capacities and the NCDAC are duplicative, the Court need not address whether Plaintiff stated claims against the individual Defendants in this regard. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). The Court, therefore, will dismiss the ADA and Rehab Act claims against the individual Defendants in both capacities.

### B. Constitutional Claims

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. __, 143 S.Ct. 1444 (2023).

#### 1. NCDAC

Plaintiff purports to assert constitutional claims under § 1983 against the NCDAC. However, "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, the NCDAC is not a "person" under § 1983. See Fox v. Harwood, 2009 WL 1117890, at *1 (W.D.N.C. April 24, 2009). Plaintiff's § 1983 claims against the NCDAC are, therefore, dismissed with prejudice.

#### 2. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Plaintiff's official capacity constitutional claims against the individual Defendants, therefore, do not survive initial review and will be dismissed.

### 3. First Amendment

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Moreover, bare or conclusory assertions of retaliation are insufficient to establish a

retaliation claim.  Id., 40 F.3d at 74.

Here, Plaintiff alleges that, when he complains "to prison officials that the items provided by the Defendants do not accommodate [his] disability, Defendants retaliate by making [his] life and living conditions more harsh and in some instances physically painful."[3]  [Doc. 15 at 12; see id. at 28-29].  Plaintiff also alleges, however, that he has never communicated with Defendants Ishee or Coleman and Plaintiff alleges nothing suggesting that these Defendants were personally aware of Plaintiff's grievances or other civil litigation or took any retaliatory action with respect thereto.  As such, taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff First Amendment retaliation claim against Defendants Feaster, Teague, Jardon, and Carson pass initial review as not clearly frivolous.  Plaintiff, however, has failed to state a claim in this regard against Defendants Ishee or Coleman and these claims will be dismissed.

### 4. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is,

---

[3] Plaintiff also alleges that he "expressed grievances against prison officials and those prison officials retaliated by, in part, depriving [him] of previously approved and supplied disability accommodations, intentionally ignoring or disregarding [his] legitimate requests for disability accommodations, leaving [Plaintiff] exposed to the elements without proper clothing, and transferring [him] from facility to facility solely for the purpose of harassment and retaliation."  [Id. at 26].  This allegation, however, does not support his retaliation claim because Plaintiff does not allege any personal participation by the named Defendants, but only generically references "prison officials."

10

Case 1:23-cv-00218-GCM     Document 16     Filed 09/25/23     Page 10 of 14

objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and punishment because the alleged events "were committed either on [Defendants'] instruction … or with the knowledge and consent of [Defendants] or were thereafter approved and ratified by [them]" and that Defendants' "acts and/or omissions… were done with the purpose and intent to cause [Plaintiff] to suffer cruel and unusual punishment." [Doc. 15 at 29]. Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a claim against the individual Defendants under the Eighth Amendment. The conditions alleged by Plaintiff, while harsh and uncomfortable, do not

rise to the level of an extreme deprivation necessary to state an Eighth Amendment claim based on conditions of confinement. Moreover, Plaintiff's allegations fail to show that the individual Defendants were subjectively aware of an objectively "excessive risk to [Plaintiff's] health and safety." See Farmer, 511 U.S. at 837. As such, the Court will dismiss Plaintiff's Eighth Amendment claim based on the conditions of his confinement.

Plaintiff also purports to state a claim against Defendants Ishee, Feaster, Teague, Jardon, and Carson for the failure to train or supervise employees. [See Doc. 15 at 30-31]. To impose liability on a supervisor for the failure to train subordinates under § 1983, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates, thus, showing a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights. City of Canton v. Harris, 489 U.S. 378, 388-92, 109 S.Ct. 119 (1989) (holding that "the inadequacy of … training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of person with whom the [subordinates] come into contact"); see also Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000).

Here, Plaintiff baldly alleges that Defendant Ishee failed to properly train or supervise Defendants Coleman, Feaster, Teague, Jardon and Carson; that Defendant Feaster failed to train or supervise Defendants Teague, Jardon, and Carson; that Defendant Teague failed to properly train or supervise Defendants Jardon and Carson; and that Defendant Jardon failed to train or supervise Defendant Carson. [Id. at 30]. These allegations are wholly insufficient to state a claim under § 1983 based on the failure to train or supervise. The Court will also dismiss this claim.

### 5. Fourteenth Amendment

Plaintiff asserts that Defendants violated his Fourteenth Amendment right to equal protection. [Doc. 15 at 30]. To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). Even taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment equal protection rights. That is, Plaintiff alleges only that Defendants "have discriminated against [him] because of [his] physical ability." [Doc. 15 at 7]. He does not set forth specific, non-conclusory allegations establishing that Defendants' alleged acts and omissions were the result of any intentional or purposeful discrimination or that he is being treated differently than similarly situated prisoners at Foothills. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). This claim will also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint survives initial review under 28 U.S.C. §§ 1915(e) and 1915A in accordance with the terms of this Order.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's ADA and Rehab Act claims against Defendant NCDAC pass initial review and that Plaintiff's ADA and Rehab Act claims against the individual Defendants are **DISMISSED** as duplicative. Plaintiff's First Amendment

retaliation claim against Defendants Jardon, Feaster, Teague, and Carson in their individual capacities only also passes initial review. All remaining claims are **DISMISSED** for Plaintiff's failure to state a claim for relief. 28 U.S.C. §§ 1915(e) and 1915A.

**IT IS FURTHER ORDERED** that Plaintiff has failed to state a claim for relief against Defendants Ishee and Coleman and these Defendants are, therefore, **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Jardon, Feaster, Teague, and Carson, who are alleged to be current or former employees of the North Carolina Department of Adult Corrections.

**IT IS FURTHER ORDERED** that Clerk is directed to mail one (1) blank summons form to Plaintiff for Plaintiff to fill out and identify Defendant North Carolina Department of Adult Corrections in the summons for service of process, and then return the summons to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. Once the Court receives the summons from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendant North Carolina Department of Adult Corrections.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: September 22, 2023

Graham C. Mullen
United States District Judge

14

Case 1:23-cv-00218-GCM    Document 16    Filed 09/25/23    Page 14 of 14