# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:23-cv-00218-GCM

| | | |
|---|---|---|
| S. SHANE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF ADULT CORRECTIONS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion to Compel Discovery from Defendants" [Doc. 47] and Defendants' Response to Plaintiff's Motion to Compel [Doc. 51] and Motion to Seal [Doc. 53].

## I.      BACKGROUND

Pro se Plaintiff S. Shane Smith ("Plaintiff") is a prisoner of the State of North Carolina currently housed at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. He originally filed this action in the Eastern District of North Carolina on November 16, 2022 [Doc. 1], and, on January 27, 2023, District Judge Terrence W. Boyle ordered that this action be transferred to the Western District.  [Doc. 9].  After failing this Court's initial review, Plaintiff timely filed an Amended Complaint.  [Doc. 15].  Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973 ("Rehab Act") against the Defendant North Carolina Department of Adult Correction (NCDAC) and his First Amendment retaliation claims against Defendants Sophia Feaster-Lawrence,

Monica Teague, Teresa M. Jordan,[1] and Deorain Carson survived initial review.[2]  [Doc. 16].   In short, Plaintiff alleges that he was born without fingers and toes and has "extremely sensitive skin" and that he is being denied certain accommodations for his disability [Id. at 8, 17-25]. Plaintiff also alleges that, when he complains to Defendants about the denial of such accommodations, they retaliate against him by making his living conditions harsher.  [Id. at 12; see id. at 28-29].  The current discovery deadline is September 16, 2024, and the current dispositive motions deadline is October 17, 2024.  [7/15/2024 Text Order].

On July 15, 2024, Plaintiff moved to compel certain discovery from the Defendants. [Doc. 47].  Plaintiff seeks an order compelling Defendants to respond more completely to six interrogatories, one request for admissions, and 10 requests for production.[3]  [See Doc. 47-7]. On May 29, 2024, Plaintiff wrote to defense counsel regarding the "many errors, omissions and deficiencies" in these responses and requested that Defendants supplement their responses. [Doc. 47-7 at 2-7].  Defendants did not respond.  [Doc. 47-2 at ¶ 19: Pltf. Dec.].  Plaintiff also sought responses to his second request for production of documents, which he served on or around February 28, 2024.[4]  [Doc. 47 at 3; see Doc. 47-7 at 7-8].  Defendants responded to

---

[1] Based on Defendants' recent filings in this matter, it appears that Defendant Teresa M. Jordan's last name is Jardon.  [Doc. 51 at 1; Doc. 52-2 at 153]. The Court will direct the Clerk to update the docket accordingly.

[2] The Court dismissed Plaintiff's remaining claims and Defendants Todd Ishee and John Coleman for Plaintiff's failure to state a claim against them.  [Doc. 16 at 13-14].

[3] Plaintiff failed to provide the Court with Defendants' disputed responses.  [See Doc. 47].  Rather than require the Plaintiff to resubmit his motion to include these responses, the Court will rely on the copy of responses provided by Defendants.  [See Doc. 52-1].  Plaintiff is admonished for future reference that the Court cannot determine the sufficiency of discovery responses not before it.

[4] On receipt of Plaintiff's motion to compel, and not having previously received Plaintiff's second request for production of documents due to administrative inadvertence, defense counsel immediately undertook to obtain the requested documents.  [Doc. 51 at 3-4; Dec. of Counsel at ¶¶ 5-7, 9].  With their response to Plaintiff's motion to compel, Defendants filed under seal all the documents that they had produced to Plaintiff to date and have indicated that they will supplement additional documents responsive to Plaintiff

2

Plaintiff's motion, addressing many of Plaintiff's claimed deficiencies and supplementing and/or further explaining some of their responses. [Doc. 51]. Plaintiff did not file a reply.

## II.     STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party moving to compel discovery must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to make the discovery. Fed. R. Civ. P. 37(a)(1).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010). The decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

---

second request for production of documents when they are received. [Id. at 4; Dec. of Counsel at ¶ 9; see Docs. 54, 52-1 to 52-4]. The Court, therefore, does not address this portion of Plaintiff's motion. The Court will, however, address Defendants' motion to seal [Doc. 53], which accompanied these documents.

3

## III. DISCUSSION

As noted, Plaintiff seeks to compel Defendants to provide more complete responses to six interrogatories, one request for admissions, and 10 requests for production. The Court will address each of these requests in turn, addressing requests collectively as appropriate.

### A. Responses to Interrogatories

**<u>Interrogatory No. 1</u>**: Plaintiff's first interrogatory asks Defendants to "[i]dentify each person who has knowledge of any discoverable matter regarding the facts alleged in this lawsuit, and for each person," to "state the subject matter as to which he or she has discoverable information." [Doc. 52-1 at 3].

In response, Defendant Carson identified Defendants Feaster-Lawrence and Teague and Defendant Monica Teague identified Jared Newton, identified as an ADA case manager at Foothills CI who collaborated with mental health social worker(s) in making initial recommendations on Plaintiff's ADA requests. [Doc. 52-1 at 3]. Defendant Feaster-Lawrence responded that the NCDAC ADA Program Manager would have knowledge, but she did not identify this individual by name. Defendant Teague responded that she had no knowledge of others with knowledge.[5] [<u>Id.</u>].

Plaintiff questions whether the response identifies "ALL the individuals who have discoverable information," noting he "strongly believe[s] there are more." [Doc. 47-7 at 2].

_____

[5] Although it appears that Plaintiff's discovery requests were propounded on all Defendants, Defendant NCDAC did not respond to Plaintiff's requests [<u>see</u> Doc. 52-1; <u>see</u> <u>id.</u> at 1] and makes no response to Plaintiff's motion to compel [<u>see</u> Doc. 51].

**Interrogatory No. 3**: Plaintiff's third interrogatory asks Defendants to "[d]escribe in detail each Defendant's complete and accurate job description(s) and/or responsibilities from December 11, 2020 through the present." [Doc. 52-1 at 4].

The individual Defendants responded separately to this request, providing their job titles and detailed accounts of their job duties for the requested time frame. [Doc. 52-1 at 4-7]. These responses occupied over three pages of text. [See id.]. Plaintiff complains that "[o]fficial job descriptions were not included." [Doc. 47-7 at 3].

**Interrogatory No. 4**: Plaintiff's fourth interrogatory asks Defendants to "[d]escribe in detail all communications, whether in person or in writing, each Defendant had with Plaintiff from December 11, 2020, through present regarding Plaintiff and his allegations in this lawsuit." [Doc. 52-1 at 7]. Plaintiff asks Defendant to "specify who was present, what was said, and by whom, where, and when each statement was made." [Id.].

Defendant Jardon responded that she was not aware of any such communications. [Id.]. Defendant Teague responded that she was without "facility-based knowledge" regarding each Defendant's communications with the Plaintiff. Defendant Teague also provided the general process for offender ADA requests and further responded that Jared Newton would have communicated with Plaintiff in writing and in person regarding the outcome of Plaintiff's ADA requests. [Doc. 52-1 at 8]. Defendant Feaster-Lawrence responded that she had correspondence with Plaintiff through the DC-746 online process implemented by the ADA Offender Services Office for NCDAC prisoner ADA requests. Defendant Feaster-Lawrence further responded that she reviewed, investigated, and made final determinations on Plaintiff's 8/26/2020, 12/6/2021, 2/10/2022, 4/14/2022, 4/18/2022, 8/4/2022, 8/5/2022, 8/9/2022, and 8/11/2022 DC-746 requests.

Case 1:23-cv-00218-GCM    Document 55    Filed 08/26/24    Page 5 of 22

Defendant Feaster-Lawrence provided that the review, assessment, and final determination of these requests, which is collectively termed "ADA Determination," are stored in the agency's HERO (Electronic Health Records Organization). [Id.]. Defendant Carson responded that he did not recall meeting the Plaintiff in person and that any communication would have occurred through the HERO system. Defendant Carson further answered that Plaintiff would have been notified by a case manager whether his requests for ADA accommodations were approved or denied and that communication may have occurred by letter correspondence and the Correspondence Tracking System. [Id.].

Plaintiff contends that Defendants' response was incomplete, stating, "I assure you, there are more." [Doc. 47-7 at 3].


**Interrogatory No. 5**: Plaintiff's fifth interrogatory asks Defendants to "[d]escribe in detail all communications, whether in person or in writing, each Defendant had with any other NCDAC staff member between December 11, 2020 and the present date regarding Plaintiff and his allegations in this lawsuit." [Doc. 52-1 at 8]. Plaintiff asks Defendants to provide, "[a]s to each communication, specify who was present, what was said, and by whom, where, and when each statement was made." [Id. at 8-9].

Defendant Jardon responded that, other than Plaintiff's formal grievances required to exhaust his administrative remedies in this case and those provided in responses here, she was not aware of any such communications. Defendant Teague responded that she was not aware of any such communications, other than her contacting her previous supervisor, Nick Mazur, to find out who to contact once she was served with Plaintiff's lawsuit. [Doc. 52-1 at 9]. Defendant Feaster-Lawrence responded that "other parties that may have been involved would include a

6

program staff person and social worker." [Id.]. Defendant Carson responded that Plaintiff's case manager met with the Plaintiff to discuss the outcome of Plaintiff's ADA accommodations requests, that such meetings were documented in OPUS as a case note, and that "[t]hese meetings will be provided in a separate document." [Id.].

Plaintiff complains that these responses were incomplete, stating again, "I assure you, there are more." [Doc. 47-7 at 3].


**Interrogatory No. 6**: In his sixth interrogatory, Plaintiff requests that Defendants "[d]escribe in detail each request, complaint or grievance you are aware that Plaintiff has made regarding each Defendant, or each Defendant's work, verbally or in writing," including "the content of his request, complaint or grievance; to whom the request, complaint or grievance was addressed; who investigated the allegations in the request, complaint or grievance and the result of that investigation; and the changes made, if any, as a result of the request, complaint or grievance." [Doc. 52-1 at 9].

Defendant Jardon responded by listing identifying information for a particular grievance. [Id.]. Defendant Teague responded that, as a Social Worker II, she is not part of the grievance process and rarely knows when an offender files an ADA-related grievance. She further recalled that Defendant Carson verbally told her "some time later" that the Plaintiff filed grievances on his ADA requests, but Defendant Carson did not elaborate. Defendant Teague did not recall when this conversation occurred, but she did recall that no one else was present. Defendant Teague stated that she had no other knowledge regarding who investigated any such grievances or if any changes were made. [Id.]. Defendant Feaster-Lawrence responded only that she is

7

aware of the instant lawsuit. [Id. at 9-10]. Finally, Defendant Carson responded by referring Plaintiff to the responses to Plaintiff's requests for production of documents. [Id. at 10].

Plaintiff contends only that "[t]he response for this interrogatory was incomplete." [Doc. 47-7 at 3].

**Interrogatory No. 13**: In his thirteenth interrogatory, Plaintiff asks Defendants to "[d]escribe in detail all investigations, whether internal or external, conducted involving any allegations raised in Plaintiff's Complaint against any named Defendants or unnamed prison employees between December 11, 2020, and the present." [Doc. 52-1 at 13].

Defendants Jardon, Feaster-Lawrence, and Carson responded that they are not aware of any such investigations. [Id. at 13-14]. Defendant Teague responded that the requested information is beyond her "facility-based knowledge." [Id. at 13].

Plaintiff contends only that "[t]he response for this interrogatory was incomplete." [Doc. 47-7 at 3].

In response to Plaintiff's motion to compel, the individual Defendants argue that their interrogatory responses were verified and that the disputed interrogatories "were answered with the knowledge they held." [Doc. 51 at 6]. These Defendants also note with respect to Interrogatory No. 3 that Plaintiff asked Defendant's to provide their job duties and now complains that they did not provide their "official" job descriptions. [Id.].

Having considered all the materials before it, the Court finds that Defendants' responses are largely sufficient to answer the interrogatories posed, particularly where Plaintiff claims only that Defendants' responses are "incomplete" and does not identify what information he believes is missing. Plaintiff also does not contend that the answers he seeks are not readily ascertainable

8

from the records that have already been produced. Further, it appears that the burden of ascertaining at least some of these answers from these documents would be substantially the same for either party. See Fed. R. Civ. P. 33(d). As for Interrogatory No. 3 in particular, Plaintiff did not request Defendants' "official" job descriptions and Defendants' answers were appropriate and responsive to Plaintiff's request.

The Court finds, however, that discoverable matters may have been omitted as a result of the NCDAC's failure to respond to Plaintiff's discovery requests. For instance, Defendant NCDAC may have information responsive to Interrogatory No. 6 not within the knowledge of the individual Defendants. As such, the Court will order Defendant NCDAC to respond to Plaintiff's discovery requests to the extent it has knowledge of or control over information or documents not known to or in the control of the individual Defendants. The Court otherwise denies Plaintiff's motion to compel to the extent he seeks supplemental responses to these interrogatories from the individual Defendants.


### B.      Request for Admission

**Request for Admission No. 18**: Plaintiff asks Defendants to admit that "every item Plaintiff has requested has previously been approved and provided to Plaintiff and is also approved through NCDAC's own policies and each request of Plaintiff's is reasonable." [Doc. 52-1 at 24].

The individual Defendants objected to this request, stating that it "is not specific enough to be answered. To the extent not objected to, denied." [Id. at 25]. In his "meet-and-confer" letter to Defendants, Plaintiff acknowledged that the RFA "could be a bit confusing." He sought to clarify, stating "[w]hat I am asking is for an admission that each item I requested as an accommodation for my disability had at one time been approved by prison officials in one form

9

or another whether it was purchased by prison officials from an outside vendor, or whether I purchased the item at my expense." [Doc. 47-7 at 4]. Plaintiff went on to list 27 items or categories of items and asked Defendants to admit that the items were provided to him or that he was allowed to purchase them as accommodations for his disability. [Id.].

In their response to Plaintiff's motion to compel, the individual Defendants supplement their response to this request. Defendants Jardon, Teague, and Carson responded that they were unable to admit or deny the request "[u]pon reasonable investigation."[6] [Doc. 51 at 7]. Defendant Feaster-Lawrence responded similarly, but she added that the Plaintiff was granted a Digital Radio on August 11, 2022. [Id.]. As noted, however, Defendant NCDAC did not respond to Plaintiff's request.

Rule 36(a)(4) provides that "[t]he answering party may assert lack of knowledge or information as a reason for failure to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). "A party must give reasons for a claimed inability to respond. It is not enough to claim lack of knowledge. A party must show the information is not reasonably within its power to obtain." United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996) (citing 8A Wright, Miller & Marcus, § 2261).

Here, the individual Defendants claim lack of knowledge after "reasonable investigation," but do not describe what efforts were taken in this regard or that the information they know or can readily obtain is insufficient to enable them to admit or deny. See Fed. R. Civ. P. 36(a)(4). More significantly, Defendant NCDAC offered no response to this Request for

---

[6] Defendant Teague responded, unintelligibly, "[u]pon reasonable investigation, I am unable to admit or deny as to the history of items, review of items on hand for plaintiff, as well as tour of living quarters and clothes house met the criteria of that what was approved for him." [Doc. 51 at 7].

Admission. While the individual Defendants certainly may lack knowledge regarding Plaintiff's specific accommodations, it seems possible that a representative of the NCDAC would have such knowledge or, at least, the ability to discover such information with reasonable inquiry. The Court will order all Defendants, including Defendant NCDAC, to supplement their responses to Request for Admission No. 18. In so ordering, the Court is mindful that the matters Plaintiff seeks to be admitted here may be found in the documents produced by the individual Defendants such that the burden of ascertaining the answer would be the same for either party. In which case, Defendant NCDAC may respond accordingly.

### C. Requests for Production

**Request for Production No. 1**: In his first request for production, Plaintiff asked Defendants to produce all NCDAC policies, Foothills CI Standard Operating Procedures (SOPs), and "any and all memorandum and directives regarding": (a) Offender Conduct Rules; (b) Classification Process; (c) Recreation; (d) Reasonable Accommodation for Offenders with Disabilities; (e) Vocation Rehabilitation Act; (f) Offender Personal Property; (g) Clothing, Bedding, and Personal Hygiene; (h) Court Related Procedures; and (i) Administrative Remedy Procedure. [Doc. 52-1 at 26].

Defendants objected to Plaintiff's request as seeking publicly available information and on the ground that SOPs contain detailed security information irrelevant to Plaintiff's claims the production of which to the offender population would pose a security risk. [Id.]. Without waiving these objections, Defendants produced the requested NCDAC policies. [Id. at 26-27; see Doc. 52-2 at 1-89].

11

Plaintiff complains that the "Departmental Policy & Procedure" Defendants produced were "printed without the required headers and footers, which prevents the documents from being properly identified" and asked Defendants to provide "corrected copies." [Doc. 47-7 at 5]. Plaintiff also complains that Defendants did not provide the corresponding facility SOPs and explains that the SOPs he requests do not involve custody or security issues and are "merely rules of prison." [Id.].

In response to Plaintiff's motion to compel, Defendants note that they validly objected on the grounds that the policies are publicly available and thus overly burdensome to produce, particularly Plaintiff's request for a copy of the Vocation Rehabilitation Act. Defendants provide that they will produce Foothills SOPs related to reasonable accommodations and inmate personal property. Defendants contend that the other Foothills SOPs are irrelevant to Plaintiff's claims and outside the scope of Rule 26. [Doc. 51 at 8-9].

The Court will deny Plaintiff's motion to compel as to this request for production. Defendants' objection is appropriate, and they nonetheless produced the requested policies and are supplementing their responses with the relevant Foothills SOPs. The Court, however, orders Defendants to review the policies produced to Plaintiff that lack the standard NCDAC header [see Doc. 52-2 at 24-89] and ensure that the Plaintiff was provided the correct versions of these policies.

**Request for Production No. 4**: In his fourth request for production, Plaintiff asked Defendants to produce "[a]ll documents, including but not limited to incident reports, e-mail transmissions, witness statements, internal investigation reports, notes, memoranda, correspondence, and any other reports or documents generated by Defendants or any other NCDAC employee relating to

or mentioning Plaintiff's allegations in this lawsuit, or any other interactions between Plaintiff and any Defendants." [Doc. 52-1 at 27].

Defendants responded without objection by producing 27 pages of documents, consisting of letter correspondence between Plaintiff and various NCDAC officials regarding, *inter alia*, Plaintiff's disability, requests for accommodations, and alleged conduct of prison staff, as well as screen printouts from the previously referenced Correspondence Tracking System. [See Doc. 52-2 at 170-197].

Plaintiff complains that Defendants failed to include "numerous photographs" taken by prison officials since December 1, 2020 "of all of [Plaintiff's] inventory items and items which were deemed by prison officials to be accommodating." [Doc. 47-7 at 6]. Plaintiff also claims that Defendants failed to produce "a single memorandum, e-mail transmission, meeting notes, official statement, or other document," which "do exist." [Id.].

In response to Plaintiff's motion to compel, defense counsel provides that he is aware of the photographs of Plaintiff's inventory of personal items that were taken to show compliance with the settlement agreement in an action filed by Plaintiff in the Superior Court of Rutherford County, but states that those photographs were taken to demonstrate compliance with the settlement agreement, not as items accommodating a disability. Defendants further provide that these photographs have been provided to Plaintiff in connection with prior litigation and that it would be overly burdensome to produce what Plaintiff already has. Defendants also respond that they produced responsive documents related to Plaintiff's ADA and Rehab Act claims and claim of retaliation. [Doc. 51 at 9].

The Court will deny Plaintiff's motion with respect to Request for Production No. 4. Plaintiff should already be in possession of the photographs he seeks, and Defendants cannot

13

produce documents that do not exist.  In this Court's experience with prisoner litigation, the

NCDAC and its employees or officials do not create memoranda or "official statements" specific

to offenders.  Moreover, to the extent e-mails regarding the facts underlying Plaintiff's claims

here may have been generated that are responsive to this or any other request propounded by

Plaintiff, the Court will not order Defendants to search for and produce them.  The time period

involved and the number of individuals who could have sent such e-mails are far too great to

require Defendants to undertake to discover them, particularly given the issues at stake here, the

amount in controversy, the importance of the discovery in resolving the issues, and the burden or

expense of the proposed discovery relative to any benefit.  Fed. R. Civ. P. 26(b)(1).


**Request for Production No. 5**: In his fifth request for production, Plaintiff asked Defendant's to

produce "[a]ll grievances filed by Plaintiff related to his allegations in this lawsuit and all

responses and materials used to formulate responses by NCDAC."  [Doc. 52-1 at 27].

Defendants responded without objection by producing 85 pages of records, including

Plaintiff's grievances and Offender Reasonable Accommodation Requests (IRAR) and NCDAC

responses thereto.  [Doc. 52-2 at 198-283].  Plaintiff claims that Defendants' response is

incomplete because they did not produce any statements or investigative notes and grievances

cannot be investigated without obtaining witness statements.[7]  [Doc. 47-7 at 6].

In response to Plaintiff's motion to compel, Defendants state that they produced all

grievance records that are kept and maintained in the OPUS database.  [Doc. 51 at 10].  Defense

counsel also states that he will check with Defendants for any additional documents responsive

---

[7] The Court notes it has frequently seen prison grievances exhausted without the need for witness statements.

to this request and report to the Court whether such documents exist and, if so, that they were discovered, identified, and served on Plaintiff.

**Request for Production No. 6**: In his sixth request for production, Plaintiff asked Defendants to produce "[a]ll requests filed by Plaintiff related to his allegations in this lawsuit and all responses and materials used to formulate responses by NCDAC." [Doc. 52-1 at 28].

Defendants responded without objection by producing 100 pages of responsive documents, which included grievance records and additional IRAR requests with responses. [Doc. 52-2 at 284- 310; Doc. 52-3 at 1-74]. Plaintiff complains only that "[a] complete list of these was not included in the response." [Doc. 47-7 at 6].

In response to Plaintiff's motion to compel, Defendants respond that they provided 100 pages of Plaintiff's requests and are unaware of any that are missing. Defendants provide that they can search for any alleged missing requests if Plaintiff can identify which requests were not included. [Doc. 51 at 10].

**Request for Production No. 9**: In his ninth request for production, Plaintiff asked Defendants to produce "[a]ll documents cited, relied upon, or to which reference was made in your response to any of the above interrogatories." [Doc. 52-1 at 28].

Defendants responded by referring Plaintiff to their responses to Plaintiff's other requests and interrogatories, subject to any objections therein. [Doc. 52-1 at 28]. Plaintiff complains only that "[t]here appear to be a lot of missing documents." [Doc. 47-7 at 6].

In response to Plaintiff's motion to compel, Defendants state that Plaintiff "cannot know what Defendants relied upon to answer interrogatories … to assert documents are missing."

[Doc. 51 at 10].  Defendants provide that, to supplement their response, Plaintiff needs to identify which documents they relied on that are missing.  [Id.].

**Request for Production No. 10**: In his tenth request for production, Plaintiff asked Defendants to produce "[a]ny and all memorandums, e-mail transmissions or other communication to or from any Defendant or NCDAC official regarding Plaintiff's disability needs pertaining to the allegations in his lawsuit."  [Doc. 52-1 at 28].

Defendants responded by referring Plaintiff to their previous responses.  [Id.].  Plaintiff complains that Defendants failed to produce "a single memorandum, e-mail transmission, meeting notes, official witness statement, or other similar document.  [Doc. 47-7 at 6].

In response to Plaintiff's motion to compel, Defendants state that documents relating to Plaintiff's ADA accommodation requests are maintained within his medical records, grievances, and ADA processes, which were included in the documents produced.

**Request for Production No. 11**: In his eleventh request for production, Plaintiff asked Defendants to produce "[a] complete, thorough, and accurate copy of Plaintiff's program records as maintained by the North Carolina Department of Adult Correction from December 1, 2020 to present."  [Doc. 52-1 at 28].

Defendants responded by referring Plaintiff to their previous responses.  [Id.].  Plaintiff complains simply that Defendants did not produce the requested documents.  [Doc. 47-7 at 6].

In response to Plaintiff's motion to compel, Defendants state that they produced Plaintiff's Correspondence Tracking System records, believing that to be the program records sought.  [Doc. 51 at 11].  Defense counsel also states that he will check with Defendants for any

additional documents responsive to this request and report to the Court whether such documents exist and, if so, that they were discovered, identified, and served. [Id.].

**Request for Production No. 12**: In his twelfth request for production, Plaintiff asked Defendants, if they denied Request for Admission No. 1, to "provide all documents that support your contention that Plaintiff is not recognized and regarded as being an individual with a very visible and identifiable physical disability."[8] [Doc. 52-1 at 29].

Defendants responded by referring Plaintiff to other responsive documents produced "[t]o the extent applicable." [Id.]. Plaintiff again complains only that Defendants did not provide him the requested documents. [Doc. 47-7 at 7].

In response to Plaintiff's motion to compel, Defendants state that they have produced Plaintiff's medical records, ADA requests and responses, grievance records, and "CTS documentation." [Doc. 51 at 11].

**Request for Production No. 13**: In his thirteenth request for production, Plaintiff asked Defendants, if they denied Request for Admission No. 2, to "provide all documents that support

---

[8] Plaintiff's Request for Admission No. 1 asked Defendants to admit that "Plaintiff is recognized and regarded as being an individual with a very visible and identifiable disability." [Doc. 52-1 at 17]. Defendants gave varying answers to this Request, either unable to admit or deny or admitting in part and denying in part. [Id.]. For instance, Defendant Jardon responded that Plaintiff has a disability, but that the qualifiers in the request are subjective, cannot be admitted, and are therefore denied. [Id.]. Defendant Teague was unable to admit that Plaintiff's physical disability is "very visible" because she has never met him. Defendant Teague admitted, however, that she learned that Plaintiff has missing digits on his hands through reviewing his medical records to process his ADA requests. [Id.].

your contention that Plaintiff's unique physical disability does not require unique accommodation."[9]  [Doc. 52-1 at 29].

Defendants responded by referring Plaintiff to other responsive documents produced "[t]o the extent applicable."  [Id.].  Plaintiff complains simply that Defendants did not provide him the requested documents.  [Doc. 47-7 at 8].

In response to Plaintiff's motion to compel, Defendants repeat that they have produced Plaintiff's medical records, ADA request and responses, grievance records, and "CTS documentation."  [Doc. 51 at 11].  Defendants further respond that these documents reflect that NCDAC officials have attempted to understand and meet the accommodation needs of the Plaintiff.  [Id.].

**Request for Production No. 18**: In his eighteenth request for production, Plaintiff asked Defendants, if they denied Plaintiff's Request for Admission No. 16, to produce "all documents that support your contention anyone employed within the NCDAC has met with the Plaintiff to discuss, attempt to resolve, or even understand the accommodation needs of the Plaintiff."[10]  [Doc. 52-1 at 30].

---

[9] Plaintiff's Request for Admission No. 2 asked Defendants to admit that "Plaintiff's unique physical disability requires unique accommodation."  [Doc. 52-1 at 17].  Defendants gave varying answers to this Request, either unable to admit or deny or admitting in part and denying in part.  [Id.].  For instance, Defendant Jardon admitted that "disabilities are provided accommodations," but denied that Plaintiff's unique disability requires unique accommodations.  [Id.].  Defendant Teague could neither admit nor deny Plaintiff's request because she does not know what a "unique accommodation" references.  [Id.].

[10] Plaintiff's Request for Admission No. 16 asked Defendants to admit that "as of this date, no one employed within the NCDAC has not ever met with the Plaintiff to discuss, attempt to resolve, or even understand the accommodation needs of the Plaintiff."  [Doc. 52-1 at 23].  Defendant Jardon denied this request, while the other individual Defendants stated that, on reasonable investigation, they lacked knowledge to admit or deny the request.  [Id. at 24].

18

Defendants responded by referring Plaintiff to other responsive documents produced "[t]o the extent applicable." [Id.]. Plaintiff complains that the Request was denied by all four Defendants, but no documents supporting this denial were provided to him. [Doc. 51 at 12].

In response to Plaintiff's motion to compel, Defendants repeat that they have produced Plaintiff's medical records, ADA requests and responses, grievance records, and "CTS documentation," and that these documents reflect that NCDAC officials have attempted to understand and meet the accommodation needs of the Plaintiff. [Id.]

As to Plaintiff's Requests for Production Nos. 5, 6, 9, 10, 11, 12, 13, and 18, Plaintiff contends that Defendants document production is incomplete and that this Court should compel the Defendants to produce the missing documents. Plaintiff, however, offers no examples of deficiencies in the Defendants' production. Rather, Plaintiff simply calls Defendants' production "incomplete" and asks Defendants to provide the missing documents. Defendants, however, appear to have appropriately responded to these requests with extensive documentation. Further, the Court finds incredulous Plaintiff's belief or contention that Defendants can point to documents supporting, for instance, their qualified denials that Plaintiff "is recognized and regarded as being an individual with a very visible and identifiable disability" or that Plaintiff's "unique physical disability requires unique accommodation." While Plaintiff can certainly argue these contentions if relevant, they are not statements amenable to proof or support by documentary evidence. Moving this Court to compel production of such documents is not a judicious use of resources. For these reasons, the Court will deny Plaintiff's motion as to Defendants' responses to Requests for Production Nos. 5, 6, 9, 10, 11, 12, 13, and 18.

19

To the extent Defendants have not supplemented their responses in accordance with their representations in response to Plaintiff's motion to compel,[11] however, Defendants will be directed to provide the Plaintiff with such documents within twenty-one (21) days of entry of this Order.  The Court will sua sponte extend the scheduling order deadlines in this matter.

## IV.     MOTION TO SEAL

Also pending is Defendants' motion to seal.  [Doc. 53].  Defendants move to seal Defendants' Exhibit 1, part B, to their response to Plaintiff's motion to compel.  [Id.; see Doc. 51-1, Docs. 52-1 through 52-4].  As grounds, Defendants argue that the subject records should be sealed because they contain confidential medical information, including Plaintiff's medical record, and records generated in the housing and handling of the Plaintiff during his incarceration, including disability grievances and accommodation request, deemed confidential under N.C. Gen. Stat. §§ 148-74 and -76.  [Doc. 53].  Defendants further contend that these records are necessary to Defendants' complete response to Plaintiff's motion to compel and that the failure to seal "would embarrass or reveal confidential information of Plaintiff, reveal confidential and protected information from NC DAC," and if not included, would prejudice Defendants.  [Id.].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."  Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).  In the present case, the public has been

---

[11] This includes Defendants' responses to Plaintiff's Requests for Production Nos. 5 and 11, and, if Plaintiff has provided additional guidance on documents he believes are missing, Nos. 6 and 9.

provided with adequate notice and an opportunity to object to the Defendants' motion. Defendants filed their motion on July 30, 2024, and it has been accessible through the Court's electronic case filing system since that time. Moreover, the public's right of access to the subject records is substantially outweighed by the competing interest in protecting the substance of such information, including the facility's interest in protecting security-related information. Having considered less drastic alternatives to sealing these Exhibits, the Court concludes that sealing these records is necessary to protect the implicated privacy interests. As such, the Court will grant Defendants' motion to seal and order that Docket Nos. 52-1 through Doc. 52-4 remain sealed. The Court will, however, direct the Clerk to unrestrict Doc. 52, which is simply a copy of the motion to seal also found at Docket No. 53.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Compel Discovery from Defendants [Doc. 47] is **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Defendants shall **SUPPLEMENT** their discovery responses and otherwise comply with this Order within twenty-one (21) days of this Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal [Doc. 53] is **GRANTED** and Docket Nos. 52-1 through 52-4 shall remain sealed.

**IT IS FURTHER ORDERED** that the parties have until October 16, 2024 to complete discovery and until November 15, 2024 to file dispositive motions in this matter.

The Clerk is respectfully instructed to unrestrict access to Docket No. 52 and to update the docket in this matter to reflect Defendant Teresa M. Jordan's true full name as Teresa M. Jardon.

**IT IS SO ORDERED**.      Signed: August 26, 2024

Graham C. Mullen
United States District Judge